**STATE of Minnesota, County of St. Louis, and Elizabeth Ann Nylund, Respondents,**

v.

**James HARTLING, Appellant.**

**No. CX–84–1360.**

Court of Appeals of Minnesota.

Jan. 15, 1985.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Alan L. Mitchell, St. Louis County Atty., T. Frank Norton, Asst. County Atty., Duluth, for respondents.

Susan Ginsburg, Duluth, for appellant.

Heard, considered and decided by PARKER, P.J., and SEDGWICK and LESLIE, JJ.

## OPINION

PARKER, Judge.

James Hartling appeals from an order denying his motion to dismiss this paternity action for lack of personal jurisdiction. He contends his contacts with Minnesota are insufficient to permit a constitutional exercise of personal jurisdiction. We affirm.

## FACTS

Elizabeth Nylund, a resident of Saginaw, Minnesota, gave birth to a son in July 1983. She alleges James Hartling is the father. They met in June 1982 at a softball game in Superior, Wisconsin, sponsored by her employer, the Casa Blanca bar. A short time later, after another softball game at Park Point in Duluth, they engaged in sexual intercourse for the first time. They dated regularly from July 1982 through mid-October 1982. They usually met in Superior after she finished work at the Casa Blanca and then engaged in sexual intercourse. The only other contact with Minnesota during their relationship occurred when he drove her home after one date. The child was conceived in Wisconsin.

Hartling has been a resident of Wisconsin his whole life; he owns no real or personal property in Minnesota. He alleges he has never called Nylund in Minnesota or dated her there. He rarely goes to Minnesota except to a shopping mall in Duluth.

After the baby was born, Elizabeth Nylund called Hartling in Superior and saw him there twice. Hartling allegedly admitted he was the child's father. When a paternity action was brought against Hartling in Minnesota, he moved to dismiss it for lack of personal jurisdiction. The trial court denied his motion. We extended discretionary review because it appears that the revised Minn.R.Civ.App.P. 103.03 inadvertently fails to provide for an appeal of right from denials of motions to dismiss for lack of personal jurisdiction.

## ISSUE

Does appellant have sufficient contacts with Minnesota to permit a constitutional exercise of personal jurisdiction in a paternity action?

## DISCUSSION

■ Before a Minnesota court may exercise personal jurisdiction over a nonresident defendant, two criteria must be met. First, the long-arm statute, Minn.Stat. § 543.19 (1982) must be satisfied. Second, there must exist minimum contacts be-

tween the defendant and this state such that assertion of jurisdiction does not offend the due process clause. *Ulmer v. O'Malley*, 307 N.W.2d 775, 777 (Minn.1981).

■ Civil proceedings to establish paternity involve tortious conduct within the meaning of the long-arm statute. *Id.; State ex rel. Nelson v. Nelson*, 298 Minn. 438, 216 N.W.2d 140 (1974). In determining whether maintenance of a suit is consistent with traditional due process notions of fairness, the court is to consider five factors:

(1) the quantity of the defendant's contacts with the state;

(2) the nature and quality of the contacts;

(3) the connection of the cause of action with those contacts;

(4) the interest of the state in providing a forum; and

(5) convenience to the parties.

*Ulmer v. O'Malley*, 307 N.W.2d at 777 (citing *Hardrives, Inc. v. City of LaCrosse*, 307 Minn. 290, 294, 240 N.W.2d 814, 817 (1976)). The defendant must "reasonably anticipate being haled into court" in Minnesota. *See West American Insurance Co. v. Westin, Inc.*, 337 N.W.2d 676, 680 (Minn. 1983) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)). The critical focus is on the relationship among the defendant, the forum, and the litigation. *Id.* at 679.

In *Howells v. McKibben*, 281 N.W.2d 154 (1979), the court extended personal jurisdiction over a nonresident defendant in a paternity action. The plaintiff lived in St. Paul; the defendant in St. Croix Falls, Wisconsin, about an hour's drive away. They had sexual intercourse both in Wisconsin and Minnesota; he visited St. Paul twice to have dinner with the plaintiff and her mother; and during the pregnancy he called her in St. Paul. The court found that his contacts with Minnesota were sufficient because a substantial part of their relationship developed in Minnesota, the contacts bore a direct relation to the cause

of action, and the defendant should have reasonably foreseen that "a continued sexual relationship with plaintiff, a Minnesota resident, might result in the injuries suffered by plaintiff * * *." *Id.* at 157.

In *Ulmer v. O'Malley*, another paternity action, the court refused to extend jurisdiction because the relationship between the plaintiff and defendant occurred entirely in South Dakota. 307 N.W.2d at 777–78. The child was conceived in South Dakota, and the mother moved to Minnesota only after she became pregnant. The defendant did not visit or call her here. His only contacts with the state took place through his attorney, who responded to an adoption agency's requests for information.

■ When the quantity of contacts is minimal, the nature and quality become dispositive. *Maiers Lumber & Supply, Inc. v. Chancey Trailers*, 354 N.W.2d 585, 587 (Minn.Ct.App.1984) (citing *Marquette National Bank v. Norris*, 270 N.W.2d 290, 295 (Minn.1978)). In this case, Nylund and Hartling initiated their sexual relationship in Minnesota. They engaged in social and sexual activities here that furthered their relationship. He knew that she was a Minnesota resident, and he could reasonably have foreseen that she might conceive and hold him responsible for child support in Minnesota. Furthermore, his contacts with the state are directly connected to the cause of action. The factors of forum interest and convenience weigh equally for both parties.

■ An evaluation of the sufficiency of contacts when a sexual relationship is involved is decidedly different than when a contract or tort is involved. We conclude that appellant's contacts are sufficient to support personal jurisdiction in a Minnesota paternity action. He began a sexual relationship in Minnesota with a Minnesota resident. His contacts were such that he could reasonably anticipate being haled into a Minnesota court for child support.

**DECISION**

Affirmed.